# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

MARISSA GIANNERINI,

      Plaintiff,

v.

                                                  CASE NO:

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, Marissa Giannerini, by and through her undersigned counsel, and, by way of this Complaint, seeks relief against Defendant Embry-Riddle Aeronautical University, Inc. for violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* (the "Rehabilitation Act"), Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000(e) ("Title VII") and the Florida Civil Rights Act of 1992, Florida Statutes §§ 760.01 ("FCRA").   In support thereof, Plaintiff states as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Marissa Giannerini ("Plaintiff" or "Ms. Giannerini") is an adult female citizen and resident of the City of Daytona Beach, Florida. At all times relevant herein, Plaintiff worked for Defendant in Volusia County, Florida.

2.     Defendant Embry-Riddle Aeronautical University, Inc. ("Defendant" or "ERAU") is a Florida not-for-profit corporation, which has its headquarters in Daytona Beach, Florida and conducts business in the City of Daytona Beach, Volusia County, Florida.   Defendant is, and has been, a covered employer within the meaning of the ADA, the Rehabilitation Act, Title VII, and the FCRA.

3.     Plaintiff was a covered employee of Defendant within the meaning of the ADA, the Rehabilitation Act, Title VII, and the FCRA at all times relevant herein.

4.     Defendant is a program or activity receiving federal financial assistance within the meaning of the Rehabilitation Act.

5.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367, 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e(5)(f)(3).

6.      A substantial part of the acts complained of herein occurred in Volusia County, Florida.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

7.      On or about August 2016, Defendant hired Ms. Giannerini to work as the Head Women's Lacrosse Coach at Embry-Riddle Aeronautical University in Daytona Beach, Florida.   In this role, Plaintiff was responsible for overseeing the newly created women's lacrosse program at ERAU, including recruiting, training and developing players.

8.      At all times relevant herein, Ms. Giannerini was a loyal and competent employee of ERAU.   Plaintiff was qualified for her position, having coached collegiate women's lacrosse for seven seasons and having played collegiate women's lacrosse for three years, receiving numerous accolades in both capacities.

9.      During her tenure at ERAU, Ms. Giannerini always received satisfactory performance reviews, annual salary increases and received satisfactory year-end reviews from her players.

10.     Upon beginning her role until the time of her termination by ERAU, Ms. Giannerini consistently demonstrated her effectiveness as a coach both on and

off the field.    Plaintiff showed immense dedication to ERAU, especially in upholding its "Student-Person-Player" philosophy[1].

11.    During her employment with Defendant, Ms. Giannerini's team received awards for their GPA, including making the Intercollegiate Women's Lacrosse Coaches Association's Academic Honor and Squad Sunshine State Conference ("SSC") Honor Roll. Players from Ms. Giannerini's team were also selected to the SSC All-Conference Team for their accomplishments on the field. Ms. Giannerini further helped develop her players through community service, providing access to a sports psychologist during the Covid-19 pandemic, as well as various leadership trainings and team-building activities.   The Athletic Department also acknowledged Ms. Giannerini for raising the most amount of money with the most donors of any other team during the Department's fundraising campaign in September 2021.

12.    Prior to her employment with ERAU and at all times relevant herein, Ms. Giannerini has been diagnosed with bipolar disorder, a disability that significantly limited one or more of her major life activities.

---

[1] ERAU's Student-Person-Player philosophy is defined as a commitment to academic achievement, campus and community involvement, personal holistic growth, and a drive to excel in sport.

13.     Despite Ms. Giannerini's disability, she was able to satisfactorily perform all of the essential functions of her job at ERAU with or without accommodation.

14.     During Plaintiff's employment with ERAU and prior to her termination, ERAU's Vice President of Human Resources Brandon Young ("Young"), General Counsel Charlie Sevastos ("Sevastos"), Director of Athletics John Phillips ("Phillips") and other ERAU employees and management became aware of Plaintiff's medical condition and disability.

15.     Despite performing successfully in her role as Head Women's Lacrosse Coach, Defendant treated Ms. Giannerini negatively in the terms and conditions of her employment in comparison to similarly-situated, non-disabled employees.

### Disclosure of Disability

16.     In or about January 2019, Phillips and Young, both non-disabled male employees of Defendant, brought Ms. Giannerini into a meeting   to discuss concerns regarding a player who had requested an immediate transfer following Ms. Giannerini's placement of the player on probation for not passing a conditioning test.

17.     The father of the player that was the subject of the meeting between Phillips and Young with Plaintiff, sent emails questioning Ms. Giannerini's

background and began sending other parents of lacrosse players on Ms. Giannerini's team pictures from a hospitalization related to Ms. Giannerini's mental health that had occurred in or around March 2012.

18.    After two discussions with Phillips and Young, Ms. Giannerini disclosed to them that she suffered from bipolar disorder, but was under medical care and had not had any issues related to her health condition since March 2012.

19.    Following the two discussions with Phillips and Young, Ms. Giannerini was asked to have a meeting with Sevastos and Young in which her disability was discussed and Sevastos told Ms. Giannerini "your position is safe."

**First Anonymous Email**

20.    On or about August 23, 2021, Ms. Giannerini was asked again to attend a meeting with Young due to an anonymous email that had been sent to ERAU decision makers about her (the "First Email").

21.    The First Email accused Ms. Giannerini of "bullying" and intimidating players though Ms. Giannerini had not yet held practice for the 2021 season and the lacrosse team did not have a season the year prior because of the Covid-19 pandemic.

22.     Prior to the First Email, no complaints were brought to Ms. Giannerini's attention from any parent or player in regard to any accusations about her.

23.     Young told Ms. Giannerini during this meeting regarding the First Email to be "less intense." Based upon the context and tone in which Young made the statement, Ms. Giannerini believes that Young's comment was directly related to her bipolar disorder diagnosis.

24.     Following this meeting, Ms. Giannerini requested a second meeting to discuss the situation with Sevastos, Young and Assistant Athletic Director for Compliance Meachelle Felps-Darley ("Felps-Darley").

25.     Prior to the second meeting regarding the First Email, Felps-Darley told Ms. Giannerini that both she and Athletic Director John Phillips ("Phillips"), Ms. Giannerini's direct supervisor, were included in the anonymous email and neither thought anything of it as "this is a type of email our athletic administration gets all the time."

26.     Young and Sevastos further told Ms. Giannerini in this second meeting that the First Email was not a cause for concern.

**Second Anonymous Email and Investigation**

27.     On or about November 1, 2021, Young asked Ms. Giannerini to meet

with Young and Sevastos regarding another anonymous email (the "Second Email").

28.     The Second Email accused Ms. Giannerini of body shaming players, being intoxicated on a team trip, taking out personal frustration on players, and using vulgarity, which were untrue. The Second Email specifically cited Ms. Giannerini's bipolar disorder, which had never been discussed with any member of the lacrosse team or their parents.

29.     During a meeting on November 1, 2021, with Young and Sevastos regarding the Second Email, Ms. Giannerini denied the accusations contained in the Second Email.   Ms. Giannerini had also requested that Ms. Felps-Darley be present as an advocate due to the extreme stress Ms. Giannerini had experienced during prior meetings with   Young and Sevastos, which was denied.

30.     At the November 1, 2021 meeting, Young stated to Ms. Giannerini that a student athlete had accused Ms. Giannerini of misconduct though Ms. Giannerini was not informed of the identity of the student nor was this accusation brought up in a recent meeting that had been held between Ms. Giannerini and Phillips, her immediate supervisor.

31.     During the November 1, 2021, meeting, Young relieved Ms. Giannerini of her duties as Head Women's Lacrosse Coach, with pay, so ERAU

8

Human Resources ("HR") allegedly could conduct an investigation into the accusations about Ms. Giannerini.

32.     Ms. Giannerini was told by ERAU representatives that she was not to speak with any students, parents, or athletic department staff during this alleged investigation.

33.     On the same day and soon after the November 1, 2021, meeting, Ms. Giannerini emailed Young and Sevastos and informed them that, among other things, her mental health disability had not been a hindrance to her job performance and she disclosed further details regarding her mental health treatment.

34.     On November 3, 2021, Ms. Giannerini provided Young and Sevastos by email with a list of individuals to assist in the investigation of Plaintiff by Young, Sevastos, and ERAU Executive Director of HR Andrea Hooper, including Ms. Giannerini's former and recently-retired direct Sport Supervisor and Assistant Athletic Director Sonja Taylor; Tiffany Jones, the lacrosse team's sports psychologist; Assistant Athletic Trainer Erin Burleson; and five parents that could provide insight into their experiences with Ms. Giannerini.

35.     In her November 3, 2021 email, Ms. Giannerini also stated that she felt uncomfortable with her mental health diagnosis being a part of the

investigation and that it was inappropriate. Specifically, Plaintiff stated to Young and Sevastos: "I feel very uncomfortable with my mental health diagnosis being raided and being part of these discussions at all. I feel that my disability is being singled out and used against me here and that is not at all appropriate."

36.    The witnesses Ms. Giannerini suggested to Young and Sevastos in her November 3, 2021 email were never interviewed as part of ERAU's investigation.

37.    Young, Sevastos, and Executive Director of HR Andrea Hooper investigated the Second Email by conducting interviews with each team member and then-Assistant Women's Lacrosse Coach Leah Peppelman. They did not interview the sports psychologist who had worked with the team on its culture the week prior, nor did they interview parents of players, although a parent purportedly sent the Second Email.

**Termination**

38.    On November 4, 2021, Ms. Giannerini attended a meeting with Young, Sevastos and Hooper in which she was informed that she was no longer in the position of Head Women's Lacrosse Coach and was given until midnight to resign and receive two weeks' pay. The stated reason to Plaintiff for the termination was a lack of trust and confidence in her ability to do her job.

39.    Prior to Defendant's stated midnight deadline for Ms. Giannerini to

decide whether to submit her resignation, Felps-Darley informed the lacrosse team that Ms. Giannerini was no longer employed with ERAU and Ms. Giannerini was locked out of all ERAU software including access to her emails.

40.    On November 5, 2021, Ms. Giannerini informed HR that she would not resign and that her termination was unlawful in violation of state and federal laws. Ms. Giannerini was then fired by Defendant.

41.    Ms. Giannerini was never placed on a performance improvement plan, probation, or given any other opportunity to prove herself prior to termination by Defendant.

42.    Similarly-situated, non-disabled ERAU employees were not terminated for engaging in the same conduct of which Ms. Giannerini was accused.

43.    ERAU regularly receives emails regarding male, non-disabled coaches, such as the ones HR received about Ms. Giannerini, concerning their conduct and these coaches have not been terminated.

44.    Similarly-situated, non-disabled, male coaches were placed on performance plans, probation, and were given other opportunities to prove themselves prior to termination by Defendant during Plaintiff's tenure.

45.    For example, Brian Frank was a male Men's Assistant Lacrosse Coach at ERAU and was accused in his year-end survey by his players of making

multiple derogatory comments regarding women including calling someone a "basic bitch" on a public social media platform. Mr. Frank was not disciplined. Mr. Frank, unlike Plaintiff, does not have a qualifying disability.

46.     Moreover, Dave Gregson was a male ERAU Men's Head Soccer Coach who received many player complaints over the years on his player surveys which included accusations of not following the Student-Person-Player philosophy and treating players poorly. ERAU placed Mr. Gregson on a performance improvement plan but did not terminate him. Mr. Gregson, unlike Plaintiff, does not have a qualifying disability.

47.     Curtis Kline was a male ERAU Head Facilities Director who used vulgarity and sexist innuendos on a communication which included Ms. Giannerini and other athletic and academic leadership. ERAU had Mr. Kline write an apology email but he received no other discipline. Mr. Kline also had other complaints against him regarding sexual harassment for which ERAU did not discipline him. Mr. Kline, unlike Plaintiff, does not have a qualifying disability.

48.     Steve Samples was a former male ERAU Assistant Athletic Trainer. Mr. Samples had multiple written and verbal accusations of sexual harassment from female student athletes and female coaches. ERAU moved Mr. Samples to a different team and put him on a probationary period. Mr. Samples, unlike Plaintiff,

does not have a qualifying disability.

49.     Chad Keller was a male ERAU Men's Basketball Coach who wrote an email to Phillips, which used vulgarity and harsh language. Mr. Keller received no disciplinary action. Mr. Keller, unlike Plaintiff, does not have a qualifying disability.

50.     Chuck Polito was a ERAU Men's Assistant Baseball Coach who has been accused of calling his players "pussies," yelling in their faces and demeaning them. Mr. Polito has not received any disciplinary action. Mr. Polito, unlike Plaintiff, does not have a qualifying disability.

51.     Kelsey Dunn was a female ERAU Head Softball Coach who has been accused of creating a negative environment and many players have expressed their concerns through the year-end survey. Ultimately several players transferred and many players quit her program.   Ms. Dunn was not terminated. Ms. Dunn, unlike Plaintiff, does not have a qualifying disability.

52.     Samantha Baggets-Bohon, a female former ERAU Women's Head Soccer Coach, was accused by a player and parent of hazing, providing alcohol during a team party and forcing members of the team to buy presents for her children. After an investigation, which took over six months, Ms. Baggets-Bohon and her assistant coach were put on probation for a year. Ms. Baggets-Bohon,

13

unlike Plaintiff, does not have a qualifying disability.

## ADMINISTRATIVE PREREQUISITES

53.     Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") for gender and disability discrimination and retaliation (referred to herein as the "Charge"), and the Charge was cross-filed with the Florida Commission on Human Relations pursuant to the FCRA.

54.     Subsequently, the EEOC issued and mailed a Notice of Right to Sue to Plaintiff.  Plaintiff has filed this Complaint within 90 days of her receipt of the Notice of Right to Sue and after 180 days following receipt by the Florida Commission on Human Relations.

55.     All administrative prerequisites, if any, have been met for each claim brought in this Complaint, and each such claim is timely brought.

## COUNT I
### (Claim Against Defendant for Disability Discrimination - Violation of 42 U.S.C. §§ 12101 *et seq.*)

56.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 - 55 above as though set forth fully herein.

57.     Plaintiff suffers from impairments that substantially limit one or more of her major life activities. Therefore, Plaintiff has a disability.

58.     During her employment with Defendant, Plaintiff was a qualified person with a disability in that she could perform the essential functions of her job with or without accommodation.

59.     At all times during her employment with Defendant, Plaintiff performed her job in a manner which should have met Defendant's reasonable expectations.

60.     Plaintiff informed Defendant of her disability prior to Defendant's harassment of Plaintiff and its termination of her.

61.     After Defendant received an anonymous complaint regarding Plaintiff, Defendant, by and through its agents, officials and/or employees, unlawfully discriminated against Plaintiff because of her disability, in violation of 42 U.S.C. § 12101 *et seq.*, by, among other ways: failing to fully and thoroughly investigate the Second Email's allegations; showing Plaintiff hostility; finding unwarranted fault with Plaintiff's job performance for no legitimate reason; finding fault with Plaintiff's job performance though non-disabled employees engaged in the same activities Plaintiff was accused of without similar consequences; failing to place Plaintiff on a performance improvement plan or provide any opportunity to improve her performance though she had never received prior counseling; considering Plaintiff's disability in an investigation concerning her work

performance; and terminating Plaintiff's employment without cause.

62.    In addition, Defendant terminated Plaintiff's employment because of her disability, in violation of 42 U.S.C. § 12101 *et seq.*

63.    Plaintiff was injured and negatively affected by Defendant because of this discriminatory work environment and her discriminatory termination.

64.    Plaintiff's treatment by Defendant was different and discriminatory when compared to that of Defendant's similarly-situated, non-disabled employees.

65.    The acts and omissions committed by Defendant were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

66.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant.

### <u>COUNT II</u>
**(Claims Against Defendant for Disability Discrimination - Violation of 29 U.S.C. §§ 701 *et seq.*)**

67.    Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 - 55 above as though set forth fully herein.

68.     Plaintiff suffers from impairments that substantially limit one or more of her major life activities. Therefore, Plaintiff has a disability.

69.     Defendant is a program or activity receiving federal financial assistance within the meaning of the Rehabilitation Act.

70.     During her employment with Defendant, Plaintiff was a qualified person with a disability in that she could perform the essential functions of her job with or without accommodation.

71.     At all times during her employment with Defendant, Plaintiff performed her job in a manner which should have met Defendant's reasonable expectations.

72.     Plaintiff informed Defendant of her disability prior to Defendant's harassment of Plaintiff and its termination of her.

73.     After Defendant received an anonymous complaint regarding Plaintiff, Defendant, by and through its owner, agents, officials and/or employees, unlawfully discriminated against Plaintiff because of her disability, in violation of 29 U.S.C. §§ 701 *et seq.*, by, among other ways: failing to fully and thoroughly investigate the Second Email's allegations; showing Plaintiff hostility; finding unwarranted fault with Plaintiff's job performance for no legitimate reason; finding fault with Plaintiff's job performance though non-disabled employees engaged in

the same activities Plaintiff was accused of without similar consequences; failing to place Plaintiff on a performance improvement plan or provide any opportunity to improve her performance though she had never received prior counseling; considering Plaintiff's disability in an investigation concerning her work performance; and terminating Plaintiff's employment without cause.

74.     In addition, Defendant terminated Plaintiff's employment because of her disability, in violation of 29 U.S.C. §§ 701 *et seq.*

75.     Plaintiff was injured and negatively affected by Defendant because of this discriminatory work environment and her discriminatory termination.

76.     Plaintiff's treatment by Defendant was different and discriminatory when compared to that of Defendant's similarly-situated, non-disabled employees.

77.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages.

## COUNT III
### (Claims Against Defendant for Disability Discrimination - Fla. Stat. §§ 760.01 *et seq.*)

78.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 - 55 above as though set forth fully herein.

79.     Plaintiff suffers from impairments that substantially limit one or more of her major life activities. Therefore, Plaintiff has a disability.

80.     During her employment with Defendant, Plaintiff was a qualified person with a disability in that she could perform the essential functions of her job with or without accommodation.

81.     At all times during her employment with Defendant, Plaintiff performed her job in a manner which should have met Defendant's reasonable expectations.

82.     Plaintiff informed Defendant of her disability prior to Defendant's harassment of Plaintiff and its termination of her.

83.     After Defendant received an anonymous complaint regarding Plaintiff, Defendant, by and through its agents, officials and/or employees, unlawfully discriminated against Plaintiff because of her disability, in violation of Fla. Stat. §§ 760.01 *et seq.*, by, among other ways: failing to fully and thoroughly investigate the Second Email's allegations; showing Plaintiff hostility; finding unwarranted fault with Plaintiff's job performance for no legitimate reason; finding fault with Plaintiff's job performance though non-disabled employees engaged in the same activities Plaintiff was accused of without similar consequences; failing to place Plaintiff on a performance improvement plan or provide any opportunity to improve her performance though she had never received prior counseling; considering Plaintiff's disability in an investigation concerning her work

performance; and terminating Plaintiff's employment without cause.

84.    In addition, Defendant terminated Plaintiff's employment because of her disability, in violation of Fla. Stat. §§ 760.01 *et seq*.

85.    Plaintiff was injured and negatively affected by Defendant because of this discriminatory work environment and her discriminatory termination.

86.    Plaintiff's treatment by Defendant was different and discriminatory when compared to that of Defendant's similarly-situated, non-disabled employees.

87.    The acts and omissions committed by Defendant were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

88.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant.

## **COUNT IV**
**(Claim Against Defendant for Retaliation - Violation of 42 U.S.C. §§ 12101 *et seq.*)**

89.    Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 - 55 above as though set forth fully herein.

90.    Plaintiff engaged in protected conduct within the meaning of the ADA

20

when she complained of Defendant's consideration of her medical diagnoses during the course of Defendant's investigation into the Second Email.

91.    After Plaintiff engaged in this protected conduct, Defendant's agents, officials and/or employees treated her differently than similarly situated non-disabled employees by, among other ways: failing to fully and thoroughly investigate the Second Email's allegations; showing Plaintiff hostility; finding unwarranted fault with Plaintiff's job performance for no legitimate reason; finding fault with Plaintiff's job performance though non-disabled employees engaged in the same activities Plaintiff was accused of without similar consequences; failing to place Plaintiff on a performance improvement plan or provide any opportunity to improve her performance though she had never received prior counseling; considering Plaintiff's disability in an investigation concerning her work performance; and terminating Plaintiff's employment without cause.

92.    In addition, Defendant terminated Plaintiff's employment because of her disability, in violation of 42 U.S.C. § 12101 *et seq.*, shortly after she engaged in protected conduct.

93.    Plaintiff was injured and negatively affected by Defendant because of this retaliatory treatment and retaliatory termination.

94.     As a direct and proximate result of Defendant's actions, Plaintiff suffered damages.

### COUNT V
### (Claim Against Defendant for Retaliation - Violation of 29 U.S.C. §§ 701 *et seq.*)

95.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 - 55 above as though set forth fully herein.

96.     Plaintiff engaged in protected conduct within the meaning of the Rehabilitation Act when she complained of Defendant's consideration of her diagnoses during the course of Defendant's investigation into the Second Email.

97.     Defendant is a program or activity receiving federal financial assistance within the meaning of the Rehabilitation Act.

98.     After Plaintiff engaged in this protected conduct, Defendant's agents, officials and/or employees treated her differently than similarly situated non-disabled employees by: failing to fully and thoroughly investigate the Second Email's allegations; showing Plaintiff hostility; finding unwarranted fault with Plaintiff's job performance for no legitimate reason; finding fault with Plaintiff's job performance though non-disabled employees engaged in the same activities Plaintiff was accused of without similar consequences; failing to place Plaintiff on a performance improvement plan or provide any opportunity to improve her

performance though she had never received prior counseling; considering

Plaintiff's disability in an investigation concerning her work performance; and

terminating Plaintiff's employment without cause.

99.    In addition, Defendant terminated Plaintiff's employment because of

her disability, in violation of 29 U.S.C. §§ 701 *et seq.*, shortly after she engaged in

protected conduct.

100.    Plaintiff was injured and negatively affected by Defendant because of

this retaliatory treatment and retaliatory termination.

101.    As a direct and proximate result of Defendant's actions, Plaintiff has

suffered damages.

**<u>COUNT VI</u>**
**(Claim Against Defendant for Sex Discrimination - Violation of 42 U.S.C. §§ 2000(e) *et seq.*)**

102.    Plaintiff hereby incorporates and re-alleges by reference herein the

allegations in Paragraphs 1 – 55 above as though set forth fully herein.

103.    During Plaintiff's employment, Defendant, by and through its agents,

officials and/or employees, unlawfully discriminated against Plaintiff because of

her sex, in violation of Title VII, by, among other ways: failing to fully and

thoroughly investigate the Second Email's allegations; showing Plaintiff hostility;

finding unwarranted fault with Plaintiff's job performance for no legitimate reason;

23

finding fault with Plaintiff's job performance though male employees engaged in the same activities Plaintiff was accused of were not terminated; failing to place Plaintiff on a performance improvement plan or provide any opportunity to improve her performance though she had never received prior counseling; and terminating Plaintiff's employment without cause.

104.   Defendant terminated Plaintiff's employment because of her sex, in violation of Title VII.

105.   The acts and omissions committed by Defendant were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

106.   As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, and compensatory damages against Defendant.

## <u>COUNT VII</u>
**(Claim Against Defendant for Sex Discrimination - Violation of Fla. Stat. §§ 760.01 *et seq.*)**

107.   Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 – 55 above as though set forth fully herein.

108.   During Plaintiff's employment, Defendant by and through its agents,

officials and/or employees, unlawfully discriminated against Plaintiff because of her sex race, in violation of the FCRA, by, among other ways: failing to fully and thoroughly investigate the Second Email's allegations; showing Plaintiff hostility; finding unwarranted fault with Plaintiff's job performance for no legitimate reason; finding fault with Plaintiff's job performance though male employees engaged in the same activities Plaintiff was accused of were not terminated; failing to place Plaintiff on a performance improvement plan or provide any opportunity to improve her performance though she had never received prior counseling; and terminating Plaintiff's employment without cause.

109.   In addition, Defendant terminated Plaintiff's employment because of her sex, in violation of the FCRA.

110.   Plaintiff was injured and negatively affected by Defendant because of this discriminatory work environment and because of her discriminatory termination.

111.   The acts and omissions committed by Defendant were willful, wanton, intentional, conscious and malicious and in deliberate disregard of Plaintiff's civil rights.

112.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to his career and reputation,

personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant.

**WHEREFORE**, Plaintiff Marissa Giannerini, respectfully requests that this Honorable Court grant the following relief:

(a)    Enter judgment on behalf of Plaintiff and against Defendant on all counts herein;

(b)    Award Plaintiff back pay including lost benefits and front pay under the ADA, Rehabilitation Act, Title VII, and the FCRA;

(c)    Award Plaintiff compensatory damages under the ADA, Rehabilitation Act, Title VII, and the FCRA in an amount to be determined by the jury;

(d)    Order Defendant to reinstate Plaintiff and other declaratory relief;

(e)    Award Plaintiff punitive damages for Defendant's willful violations of the ADA, Title VII, and the FCRA;

(f)    Award Plaintiff reasonable attorneys' fees, court costs, expenses, pre-judgment interest, and post-judgment interest; and

(g)    Such other or further relief as the Court deems appropriate and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands trial by jury as to all issues so triable as a matter of right.

Dated:   November 9, 2022

Respectfully Submitted,

<u>/s/Neil L. Henrichsen</u>
Neil Henrichsen
Fla. Bar No. 0111503
Allison Cross
Fla. Bar No. 1035295
HENRICHSEN LAW GROUP,
PLLC
301 W. Bay St., 14th Floor
Jacksonville, FL 32202
(904) 381-8183
(904) 212-2800 (Facsimile)
nhenrichsen@hslawyers.com
service@hslawyers.com
**Attorneys for Plaintiff**

27