## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARISSA GIANNERINI,

     Plaintiff,

v.                           CASE NO: 6:22-cv-02075-RBD-LHP

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.,

     Defendant.

_____/

## PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF HER RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Giannerini,[1] pursuant to this Court's November 8, 2023 order (Doc. 52), hereby files this supplemental brief in opposition to ERAU's MPO.

### I.    THE MPO SHOULD BE DENIED

A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c)(1).

> The burden is on the movant to show the necessity of the protective order, and the movant must meet this burden with a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."  In addition to requiring good cause, the district court must "balance the interests of those requesting the order."

_____

[1] Unless separately defined herein, all capitalized terms shall be defined as they were in Document 51.

*Ekokotu v. Fed. Expr. Corp.*, 408 F. Appx. 331, 336 (11th Cir. 2011). ERAU has not demonstrated that the documents at issue are privileged, and it significantly overreaches with respect to its arguments on privacy. The MPO should be denied.

**A.      ERAU's Second Revised Log Fails to Satisfy Rule 26**

Rule 26(b)(5)(A)(ii) requires that a party claiming a privilege "describe the nature of the documents . . . not produced or disclosed – and do so in a manner that . . . will enable other parties to assess the claim." "Blanket and general assertions of a claim of privilege do not provide sufficient detail about the documents to enable the plaintiff or the court to determine whether the withheld documents were privileged." *Meade v. Gen. Motors, LLC*, 250 F. Supp. 3d 1387, 1393 (N.D. Ga. 2017) (citations omitted). Conclusory assertions such as "'[c]onfidential attorney work product concerning environmental claims made in connection with Berks Associates, Douglassville, PA site" and "Attorney-client communication regarding employment history of certain employees and employer obligations [and] internal investigation regarding same" fail these requirements. *See id.* at 1396; *CSX Transp., Inc. v. Admiral Ins. Co.*, No. 93-132-CIV-J-10, 1995 WL 855421 at *3 (M.D. Fla. July 20, 1995).

ERAU has claimed an attorney-client privilege over several documents.[2] The description for each entry includes some variation of the following: "Communication with in-house counsel requesting legal advice regarding the investigation," or

---

[2] To wit, ERAU 361, 394, 398, 399, 404, 409, 413, 580, 581, 582, 599, 600-01, 602-03, 604-13, 615, 618, 619, 620, 628-30, 631-001 – 631-003, 632-33, 634-45, 637-38, 641, 642-43, 644-001 – 644-004, 653-55, and 660-61. Doc. 51, Ex. C.

"Communications with in-house counsel providing legal advice concerning interviewing a witness." Doc. 51, Ex. C. These entries fail to satisfy Rule 26, and are materially indistinguishable from those in *Meade* and *CSX Transportation*. The affidavit of Charlie Sevastos is similarly conclusory and insufficient. *See, e.g.*, *Carpenter v. Mohawk Indus., Inc.*, No. 4:07-CV-0049-HLM, 2007 WL 5971741 at *10 (N.D. Ga. Oct. 1, 2007). Despite several attempts, ERAU has not justified its claim. *See* Doc. 51, Exs.D-G. ERAU has waived the privilege. *Cf. Meade*, 250 F. Supp. 3d at 1396.

**B.    *The Documents are Otherwise not Privileged***

"The party invoking the attorney-client privilege bears the burden of proving that (1) an attorney-client relationship existed, (2) that a confidential communication was made to or from (3) an attorney who had been retained for the purpose of securing legal advice or assistance." *Id.* at 1391 (citation omitted). "[I]n the Eleventh Circuit, the attorney-client privilege should be construed as narrowly as consistent with its purpose." *Payne v. Seminole Elec. Coop., Inc.*, No. 3:19-cv-1173-TJC-MCR, 2021 WL 3017392 at *10 (M.D. Fla. Feb. 2, 2021) (citation omitted).

The transmission of factual information, such as "reports reflecting the status of litigation and containing purely factual information," is not protected. *Meade*, 250 F. Supp. 3d at 1392 (citations omitted). The predominant purpose of a communication must be to provide or secure legal advice. *Payne*, 2021 WL 3017392 at *9 (footnote omitted). Thus, "for investigations, communications, and the like that are 'of a nature that the business would ordinarily have conducted in all events,' the privilege does not

3

attach." *Meade*, 250 F. Supp. 3d at 1392 (citations omitted); *see also Koumoulis v. Independent Fin. Mktg. Grp.*, 29 F. Supp. 3d 142, 146-47 (E.D.N.Y. 2014).

Courts have required a clearer showing that the legal purpose of a communication predominated where in-house counsel is involved. *See Meade*, 250 F. Supp. 3d at 1392 ("'[The] expanded role of legal counsel within corporations . . . has . . . *increased the burden* that must be borne by the proponent of corporate privilege claims relative to in-house counsel.'" (emphasis added) (citation omitted)). Consistent with this skepticism, "[w]hen an email is sent to a lawyer and non-lawyers in the corporation are *copied*, it 'raise[s] a question as to whether the primary purpose of the communication was for legal advice or assistance.'" *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, No. 6:09-cv-1002-Orl-31TBS, 2012 WL 5415108 at *4 (M.D. Fla. Nov. 6, 2012) (citation omitted) (alteration in original); *see also Poertner v. Gillette Co.*, No. 6:12-cv-803-Orl-31DAB, 2013 WL 12149369 at *2 (M.D. Fla. Mar. 12, 2013).

While the Second Revised Log is deficient, what little is known demonstrates that no privilege adheres to these documents. In all but nine (9) of the documents listed,[3] there are one or more employees copied to the communication. This alone raises a question as to the purpose of these communications. In several communications, there are multiple individuals copied on the message, individuals with no apparent connection to the subject of the investigation or the decision at issue.[4]

---

[3] Those nine (9) are ERAU 409, 580, 581, 582, 599, 602-03, 637-38, 641, and 653-56. *See* Doc. 51, Ex. C.

[4] These are ERAU 361, 399, 413, 631-001 – 631-003, and 632-33. *Id.*

*See also* Ex. Q at 4-5.[5]  Mr. Sevastos participated in the interview of Giannerini.  *See also* Doc. 1 at ¶¶ 14, 24-38.   He also received status updates concerning the investigation.  *See* MPO, Ex. B at ¶¶ 6, 11, 13; *see also* Doc. 51, Ex. C (ERAU 618, 619, and 641 refer to updates).  Mr. Sevastos operated in a business, not legal, function.

In addition, ERAU has improperly claimed privilege over factual matters.[6]  For instance, ERAU 580, 581, and 582 are noted as memoranda of the interviews that immediately preceded Giannerini's termination.  Likewise, ERAU 398, 404, 604-13, 642, 653-56, and 660-61 contain attachments and other factual information.   Other documents, such as ERAU 399 and 618, pertain to meeting requests or status updates. None of these documents are privileged.

## C.   *ERAU has Put Certain Allegedly Privileged Documents "At Issue"*

"Because the attorney-client privilege is a shield and not a sword, a party may waive the privilege 'if it injects into the case an issue that in fairness requires an examination of otherwise protected communications.'"  *Carpenter*, 2007 WL 5971741 at *10 (citations omitted).  This waiver occurs where the party "inject[s] a new factual or legal issue into the case."  *Id.* at *10.  "[A] party waives the attorney-client privilege where it employs its counsel in oversight or investigatory activities."  *Jackson v. Deen*, No. CV412-139, 2013 WL 3863889 at *5 (S.D. Ga. July 25, 2013) (citation omitted). Thus, the privilege is waived as to all documents relating to an internal investigation

---

[5] For ease of the court, this exhibit has been labeled sequentially with those attached to Giannerini's initial response to the MPO.
[6] To wit, ERAU 398, 399, 404, 580, 581, 582, 604-13, 618, 619, 641, 642, 653-56, 660-61.  Doc. 51, Ex. C.

when that investigation is claimed to have justified the employment action at issue. *See, e.g.*, *id.* at *4-5; *Carpenter*, 2007 WL 5971741 at *10-13; *see also Peterson v. Wallace Computer Servs., Inc.*, 984 F. Supp. 821, 826 (D. Vt. 1997).

ERAU has justified its actions based on an internal investigation. *See* Ex. Q at 5, 10-11. Nevertheless, ERAU seeks to shield its investigation from Giannerini.[7] ERAU's investigation is highly relevant. *See generally Smith v. Chrysler Corp.*, 155 F.3d 799, 807-09 (6th Cir. 1998) (analyzing information provided to employer in assessing pretext); *Kowalski v. L&F Prods.*, 82 F.3d 1283, 1289-90 (3d Cir. 1996) (same); *see also Llampallaas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998) (discussing cat's paw theory). Having claimed an honest belief, ERAU cannot foreclose Giannerini from testing its veracity and reasonableness because of Mr. Sevastos's involvement. ERAU has waived its privilege over the 2021 investigation documents.[8]

## D.   *ERAU's Sought-After Confidentiality Order is Overly Broad and Cumbersome*

Good cause requires "'a sound basis or legitimate need' to limit discovery of the subject information." *See Stone v. Wolf & Co., P.C.*, No. 09-81187-CIV-MARRA/JOHNSON, 2010 WL 11597694 at *1 (S.D. Fla. May 12, 2010). Any protective order entered must be "structured in such a way as to be narrowly tailored to achieve the desired result." *Id.* at *2; *see also Cabrera v. Goodyear Tire & Rubber Co.*,

---

[7] To wit, ERAU 361, 399, 409, 413, 580, 581, 582, 599, 600-01, 602-03, 631, 632-33, 634-35, 637-38, 655-56, 660-61. Doc. 51, Ex. C. Similarly, ERAU has previously sought to completely insulate its investigation from any scrutiny. Doc. 46 at 6, 10.

[8] To the extent that any documents pertaining to the 2019 investigation factored into the termination decision, those would also be "at issue" here and not subject to privilege.

No. 10-21226-CIV-HOEVELER/BANDSTRA, 2011 WL 13220447 at *2 (S.D. Fla. May 18, 2011) (requiring production of personnel file with limited redactions, which did not include the employee names).  The identities of the student-athletes, their parents, and ERAU's employees is not confidential, protected by FERPA,[9] or properly the subject of a protective order.  *See* Doc. 51 at 3.  Regardless, Giannerini's interests in discovery outweigh any privacy concerns.  *See Hashem v. Hunterdon Cnty.*, No. 15-8585 (FLW)(DEA), 2018 WL 2337145 at *4 (D.N.J. May 23, 2018); *supra* Part I.C.

The limited authority ERAU has cited does not advance its argument.  The *Doe* decision is uninstructive because there was no live dispute on this issue in that case.  The *Ragusa* decision is also inapposite because the identities of the students were not material.  Here, in contrast, the identities of these persons is key because, *inter alia*, what they said and *whether* they said it is material.  *Hashem*, 2018 WL 2337145 at *4.

Nevertheless, Giannerini is not opposed to the entry of a reasonable protective order along the following lines:  (1) limiting use to the instant suit; (2) limiting access as set forth in Exhibits H (p. 5) and R (p. 9); (3) requiring production in unredacted form; (4) providing a process for designation as provided in Exhibit R (p. 4-8); (5) requiring properly designated confidential information be filed in redacted form or under seal; (6) permitting reasonable use of the documents as set forth in Exhibit R (p. 9-10); and (7) requiring the return or destruction of properly designated confidential information as provided in Exhibits H (p. 7) and R (p. 16-17).

---

[9] The argument to the contrary made by ERAU is the distinct minority position.  *See Univ. of Ky. v. Kernel Press, Inc.*, 620 S.W.3d 43, 57-58 (Ky. 2021).

Dated: November 14, 2023                 Respectfully Submitted,

*/s/ Ronald P. Angerer, II*
Ronald P. Angerer, II, B.C.S.
Florida Bar No. 0104874
Neil L. Henrichsen
Florida Bar No. 111503
Henrichsen Law Group, P.L.L.C.
301 W. Bay Street, Suite 1400
Jacksonville, FL 32202
Phone: 904-381-8183
rangerer@hslawyers.com
nhenrichsen@hslawyers.com
service@hslawyers.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record on this 14th day of November 2023.

By:     */s/ Ronald P. Angerer, II*
Ronald P. Angerer, II, B.C.S.