UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No. 6:22-cv-02075-RBD-LHP

MARISSA GIANNERINI,

    Plaintiff,

v.

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.,

    Defendant.

_____/

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT
OF ITS MOTION FOR PROTECTIVE ORDER**

Defendant ERAU, per this Courts' November 8, 2023 Order (Doc. 52), files this supplemental brief in support of its Motion for Protective Order (the "Motion") and Memorandum of Law (Doc. 48). ERAU respectfully requests an order: 1) finding the documents on ERAU's privilege log are privileged; 2) protecting non-party student identifying information, including allowing ERAU to redact this information; 3) protecting non-party ERAU employees' confidential information, including any discipline history; 4) prohibiting Plaintiff and her counsel from contacting students to dispute whether the statements made to ERAU during the investigation into Plaintiff's conduct are true. ERAU also reincorporates its arguments on these issues from its previous filings on these exact issues, including: ERAU's Motion for Protective Order (Doc. 48), ERAU's Response in Opposition to Plaintiff's Motion to Compel (Doc. 41), and ERAU's Supplemental Response in Opposition to Motion to Compel (Doc. 46).

I.    **ERAU's Privilege Log Sufficiently Identifies Privileged Communications.**

ERAU's privilege log sufficiently describes the privileged communications between ERAU's general counsel and ERAU employees. Plaintiff asserts that ERAU "mistakenly argues that the 'mere exchange of information with an attorney make[s] out a presumptive claim.'" Doc. 51, p.1. But ERAU never makes this argument in support of its Motion. *See* Doc. 48, pp.1-2. Rather, Plaintiff partially quotes language from *Meade v. Gen. Motors, LLC*, 250 F. Supp. 3d 1387, 1391 (N.D. Ga. 2017) and fails to put it in the proper context. In *Meade*, a case discussing the Eleventh Circuit's rule for a party invoking the attorney-client privilege, *U.S. v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir.1991), the court cited these factors for consideration: "(1) an attorney-

1

client relationship existed, (2) a confidential communication was made to or from (3) an attorney who had been retained for the purpose of securing legal advice or assistance." *Id.* The *Meade* Court also stated, "Neither the existence of an attorney-client relationship nor the *mere exchange of information with an attorney make out a presumptive claim.*" *Id.* (citation omitted). The quote in its entirety demonstrates that one element alone is not enough to claim the privilege—all three elements must be satisfied. ERAU's privilege log easily meets the *Meade* and *Schaltenbrand* touchstones.

Importantly, Plaintiff does not challenge the sufficiency of ERAU's supporting Sevastos Affidavit (Doc. 48-2). Plaintiff admits that Mr. Sevastos is ERAU's vice president and *general counsel.* Doc. 51, p.2. Mr. Sevastos may sometimes operate "in a business function," as Plaintiff asserts. Here, however, as in-house general counsel, Mr. Sevastos operated in a purely legal capacity. The primary purpose of his communications with ERAU employees was to render legal advice or to receive information so he could render legal advice to "assist in any investigations involving claims and/or potential claims against ERAU…." (Doc. 48-2, ¶ 3).

Courts have recognized this "primary purpose" principle when assessing claims of privilege where in-house counsel is involved. "[I]n-house legal counsel participates in and renders decisions about business . . . , as well as purely legal issues. . . . As a result, courts require a clear showing that the attorney was acting in his professional legal capacity before cloaking documents in the privilege's protection." *Meade,* 250 F. Supp. at 1392; *see also In re Seroquel Products Liab. Litig.*, 606MD1769-ORL-22DAB, 2008 WL 1995058, at *4 (M.D. Fla. May 7, 2008) ("There is general agreement that

2

the protection of the privilege applies only if the primary or predominate purpose of the attorney-client consultations is to seek legal advice or assistance.") (internal marks omitted). The descriptions in ERAU's privilege log clearly show that the primary purpose of Mr. Sevastos's involvement in this matter was in a legal capacity.

Furthermore, ERAU's privilege log is not "too vague and conclusory." Doc. 51, p.2. ERAU's privilege log (Doc. 48-1) contains required information that "identif[ies] each document and the individuals who were parties to the communications, [and] provid[es] sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *CSX Transp., Inc. v. Admiral Ins. Co.*, 1995 WL 855421, at *3 (M.D. Fla. July 20, 1995) (citation omitted). Additionally, ERAU's log also contains "other required information, such as the relationship between the individuals listed in the log and the litigating parties" and "the maintenance of confidentiality" (*see* Docs. 48-1 & 48-2). *Id; see also* Standing Order Re: Discovery Logs (Doc.25, pp. 1-2); Middle District Discovery (2021) at Section VI.

ERAU's privilege log and supporting Sevastos Affidavit contain detailed entries that describe the privileged and confidential nature of certain communications between Mr. Sevastos, in his professional legal capacity, and ERAU employees, where legal advice was sought or rendered. (Doc. 48, pp. 1-2). "If one of the primary purposes of the communication is to seek legal advice, then the attorney client privilege attaches." *Meade,* 250 F. Supp. at 1391 (citation omitted); *see also Upjohn Co. v. U.S.*, 449 U.S. 383 (1981) (finding privilege appropriate where "[t]he communications at issue were made by Upjohn employees to counsel for Upjohn acting as such, at the

3

direction of corporate superiors in order to secure legal advice from counsel"); *In re Seroquel*, 2008 WL 1995058, at *4 (acknowledging "the principle that when in-house attorneys are asked to provide or relay legal advice to the client corporation or its agents, the communications are protected by the attorney-client privilege").

II.     **Non-Parties' Privacy Should Be Protected.**

Plaintiff cites only *Walker v. Newman Univ., Inc.*, 2020 WL 2766526 at *1-2 (D. Kan. May 28, 2020), in support of her claim that "none" of the documents withheld to protect student's privacy are protected by FERPA (Doc. 51, p. 2). However, even though the *Walker* court found certain exceptions to "education records" applied, the court still implemented numerous protections for students' privacy, including ordering the plaintiff to (1) protect the documents from disclosure, (2) use the documents only for purposes of the lawsuit, (3) redact FERPA-protected information from documents filed with the court or file the documents under seal, and (4) return all documents to the University at the conclusion of the lawsuit. *Id*. at *2-3. Thus, *Walker* only supports ERAU's request for reasonable protections of students' privacy.

Plaintiff's suggestion that no FERPA protections apply is incorrect. *See Rhea v. Dist. Bd. of Trustees Santa Fe Coll.*, 109 So. 3d 851, 853, 858 (Fla. 1st DCA 2013) (holding student email complaining of teacher's "inappropriate classroom behavior, his humiliating remarks to the students, and his unorthodox teaching methodologies" was record "directly related to" student and thus an "education record" under FERPA). When a record contains student information, "it is irrelevant under the plain language in FERPA that the record may also contain information directly related to a teacher

or another person." *Id.* at 858. Nonetheless, even when the documents sought are not subject to a evidentiary privilege, "federal courts have recognized that privacy interests and confidentiality concerns can factor into" their decision to prohibit discovery. *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1336 (11th Cir. 2020).

Plaintiff completely misses the mark in arguing that "the identities of the Women's lacrosse team are public record" (Doc. 51, p. 2), and citing to *Bigge v. Dist. Sch. Bd. of Citrus Cnty.*, No. 5:11-cv-210-Oc-10TBS, 2011 WL 6002927 (M.D. Fla. Nov. 28, 2011), in which the court ordered the release of a student's name and contact information where "it took the Court about one minute to find the names…on the internet" and "it probably would not be difficult to locate a good address." *Id.* at *2-3. What is at issue here is the sensitive, private information connected to each student's name, as specifically detailed in the Kahn affidavit (Doc. 48-3)—not solely the name itself. The facts that students felt abused or had failing scores are not public record.

Thus, documents should be redacted and produced subject to a confidentiality order which protects the privacy of the students. *See, e.g., Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 294 (E.D.N.Y. 2008). *See also*, *Doe v. Rollins Coll.*, 618CV1069ORL37LRH, 2019 WL 11703979, at *5 (M.D. Fla. Apr. 10, 2019)(ordering production of relevant educational records in redacted form).

ERAU prepared a revised proposed Agreement to protect the students' privacy and address Plaintiff's concerns, including removing provisions with which Plaintiff did not agree and adding protections for Plaintiff's medical records received from her treating physicians via non-party subpoenas. Doc. 48-4. However, Plaintiff made

extensive changes which stripped the Agreement of its most important protections—such as prohibiting filing a legend revealing all redacted student names absent Court order—and expanded it beyond the proportional needs of this single plaintiff disability and sex case to allow any party to designate any document "confidential". Doc. 51-8.

ERAU also requests the protective order prohibit Plaintiff from contacting students about their statements absent agreement by ERAU or a court order. ERAU previously advised the Court that Plaintiff's counsel raised the question of whether any confidentiality agreement would prevent Plaintiff from suing students for defamation. *See* Doc. 41, p. 2, Doc 46, pp. 9-10. Students should be protected from this harassment.

Plaintiff also should not be permitted to conduct dozens of mini-trials (approximately 35 students) over whether the students' reports were accurate as it is irrelevant whether an employee actually engaged in misconduct leading to her termination. The Eleventh Circuit holds that employees interviewed in an employer's investigation can be "lying through their teeth". The relevant inquiry is whether the employer believed Plaintiff engaged in the misconduct. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991). The same is true here with student reports.

Finally, Plaintiff seeks the personnel files—including the disciplinary history—of non-party current and former employees of ERAU, including various supervisors, alleged comparators, and others. ERAU objected to the wholesale production of personnel files, but agreed it would produce certain documents subject to a confidentiality agreement. The substantive objection is *not* before this Court, but ERAU seeks protection for any documents produced going forward. As these files

contain the personal, private information of non-party individuals, their identities and confidential information, specifically including their discipline history, should be protected. While Plaintiff did not object to the inclusion of employees in the confidentiality agreement she proposed (*see* Doc. 51-8), inexplicably, Plaintiff now objects to this, complaining the protection is "overbroad" and conclusively stating her interests "outweigh any privacy interests tied up in these records". Doc. 51, p.3. Yet, the case cited by Plaintiff, *Ard v. Custom Tree Serv., Inc.*, 3:07-CV-621-J-12JRK, 2008 WL 11433202, at *4 (M.D. Fla. Jan. 8, 2008), again supports ERAU's request for reasonable protections of non-parties' privacy. There, the court recognized "that the files are of third parties who are not involved in this suit, the potential for the files containing sensitive information is concerning", and ordered defendants to "redact any sensitive information". *Id*. (emphasis original). The *Ard* court went even further to state that a protective order would be appropriate if the information from the redacted files still contained sensitive information, as the interests of the third parties must be protected. *Id*. Similarly, here, ERAU merely seeks to protect the privacy of non-parties as provided in Doc. 48-4 or in *Ragusa.* 549 F.Supp.2d at 294.

III.   **Plaintiff Is Not Entitled To Expenses.**

Plaintiff is not entitled to fees and costs pursuant to Federal Rule 26(c)(3) or Rule 37(a)(5). Plaintiff generally references Rule 26, but provides no factual basis. ERAU's Motion was substantially justified, and in fact, necessitated by the positions Plaintiff has taken. Thus, the Court's ruling was required. The circumstances for seeking relief would make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(B).

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned counsel has complied with Local Rule 3.01(g) and this Court's Order, Doc. 52, and conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised by this Motion. Counsel has met multiple times throughout this dispute as specifically detailed in ERAU's previous certificate of conferrals. Counsel again met on November 13, 2023 and were unable to make any progress on a confidentiality agreement.

DATED: November 14, 2023.

Respectfully submitted,

/s/ *Allison O. Kahn*
Allison O. Kahn
Florida Bar Number 496138
E-mail: akahn@carltonfields.com
**CARLTON FIELDS, P.A.**
CityPlace Tower – Suite 1200
525 Okeechobee Boulevard
West Palm Beach, FL 33401-6350
Telephone: (561) 659-7070
Facsimile: (561) 659-7368

-and-

Lauren Fenton-Valdivia
Florida Bar Number 1020702
E-mail: lfenton-valdivia@carltonfields.com
**CARLTON FIELDS, P.A.**
4221 W Boy Scout Blvd., Suite 1000
Tampa, Florida 33607
Tel: (813) 223-7000; Fax: (813) 229-4133

*Attorneys for Defendant,*
*Embry-Riddle Aeronautical University, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing system.

                                                                                */s/ Allison O. Kahn*

## SERVICE LIST

**Plaintiff, Marissa Giannerini v.
Defendant, Embry-Riddle Aeronautical University, Inc.
Case No. 6:22-cv-02075-RBD-LHP**

Neil Henrichsen, Esq.
Ronald P. Angerer, II, Esq.
Kadean Wilson, Esq.
HENRICHSEN LAW GROUP, PLLC
301 W. Bay St., 14th Floor
Jacksonville, FL 32202
rangerer@hslawyers.com
nhenrichsen@hslawyers.com
kwilson@hslawyers.com
service@hslawyers.com
*Attorneys for Plaintiff, Marissa Giannerini*
**VIA CM/ECF**